**United States District Court
District of Massachusetts**

```
                                  )
KG URBAN ENTERPRISES, LLC,        )
         Plaintiff,               )
                                  )
         v.                       )    Civil No.
                                  )    11-12070-NMG
GOVERNOR DEVAL PATRICK and        )
CHAIRMAN AND COMMISSIONER OF THE )
MASSACHUSETTS GAMING COMMISSION, )
in their official capacities,     )
         Defendants.              )
                                  )
```

**MEMORANDUM & ORDER**

**GORTON, J.**

Plaintiff challenges a provision of an Act Establishing

Expanded Gaming in the Commonwealth, 2011 Mass. Acts ch. 194

("the Gaming Act"), that it alleges unconstitutionally prevents

it from competing for a commercial gaming license in southeastern

Massachusetts.  Pending before the Court are competing motions to

intervene filed by the two federally recognized Indian tribes

residing in southeastern Massachusetts, as well as two

conditional motions to intervene filed by related parties.

**I.   Background**

In February, 2012, the Court declined to find the Gaming Act

unconstitutional based upon what it believed to be a pure

question of law, and therefore denied plaintiff's motion for a

preliminary injunction and dismissed the case.  See Docket No. 26.

-1-

That opinion described the disputed provision of the Gaming Act and the related federal statute, the Indian Gaming Regulatory Act ("IGRA"). The Court assumes familiarity with those statutes and focuses instead on the instructions of the First Circuit Court of Appeals which reversed this Court's decision and remanded the case for further proceedings as enlarged upon below.

## A.   The First Circuit's Remand

In August, 2012, the First Circuit affirmed this Court's denial of injunctive relief but remanded the case for further proceedings. It did so because, although denial of relief at "[that] point in time" was appropriate, see KG Urban Enterprises, LLC v. Patrick, 693 F.3d 1, 27 (1st Cir. 2012), the Court could not determine whether "issuance of equitable relief may not be appropriate at some future date." Id.

That temporal distinction stemmed from a perceived ambiguity as to whether § 91 of the Gaming Act was "authorized" by IGRA and, therefore, constitutional, under Washington v. Confederated Bands & Tribes of Yakima Indian Nation, 439 U.S. 463, 99 S. Ct. 740, 58 L. Ed. 2d 740 (1979) ("Yakima"), at a point in time when there were no "Indian lands" within Region C. On appeal, plaintiff conceded that if a federally recognized tribe in Massachusetts possessed "Indian lands" in Region C within the meaning of IGRA, § 91 of the Gaming Act would be "authorized" under Yakima and subject only to rational basis review. See KG

-2-

Urban, 693 F.3d at 21. The First Circuit opined that plaintiff's "strongest argument" contesting the constitutionality of § 91 was based upon the Supreme Court's recent decision in Carcieri v. Salazar, 555 U.S. 379 (2009), which held that the Secretary of the Interior lacked authority to take lands into trust on behalf of federally recognized Indian tribes which were not "under federal jurisdiction" in 1934. KG Urban, 693 F.3d at 22. If the Secretary lacked that authority, so plaintiff argued, there was no real prospect, absent an act of Congress, for land to be taken into trust and there could be no Indian lands in Region C that "authorized" § 91 under Yakima. See id.

In addition to noting that the constitutionality of § 91 may well depend upon the eligibility of the Mashpee Wampanoag Tribe ("the Mashpee") to have land taken into trust, the First Circuit articulated an alternative basis under which the Gaming Act might pass constitutional muster:

> If the Secretary is willing under the IGRA to approve a tribal-state compact contingent on the relevant land being later acquired in trust, then the Commonwealth can argue that § 91 establishes a parallel mechanism, meant to facilitate the purposes of the IGRA, even if not precisely authorized by the IGRA, for a limited period of time.
>
> The argument, of course, would become weaker with the passage of time and the continuation of the status that there are no "Indian lands" in the region. The tribal-state compact entered into weakens the state's position by extending the period of time. . . And the argument is qualitatively different, and even weaker, to the extent that Congressional action is required to provide the Secretary authority to take this land into

trust.

KG Urban, 693 F.3d at 25.

## B.   The Tribal-State Gaming Compacts

While this Court's denial of plaintiff's motion for
preliminary injunction was pending on appeal in July, 2012, the
Commonwealth and the Mashpee entered into a tribal-state compact
that was approved by the Massachusetts General Court shortly
thereafter ("the First Compact").   In October, 2012, the Bureau
of Indian Affairs ("BIA") disapproved of the First Compact on the
grounds that, inter alia, the Commonwealth would have been
permitted to retain too great a percentage of the Mashpee's
gaming revenues.   The two sides returned to the negotiating table
thereafter and, in March, 2013, entered into a revised
tribal-state compact ("the Second Compact").   Consideration of
the Second Compact is currently underway in the Massachusetts
General Court.

## C.   The Decision by the Massachusetts Gaming Commission to Accept Commercial Licensee Applications for Region C

Following the BIA's disapproval of the First Compact, in
December, 2012 defendant Massachusetts Gaming Commission ("the
Commission") solicited public comment on a so-called "dual track"
proposal under which it would begin accepting commercial
applications for a Category One gaming license in Region C while
the Mashpee continued to pursue the federal approvals necessary
to operate a tribal casino there.   Notably, under that proposal,

-4-

the Commission would terminate the commercial application process in Region C if at any point it determined that the Mashpee had made substantial progress toward eligibility for IGRA-compliant gaming.  After a public meeting, and at the request of the Mashpee, the Commission resolved to take no action on the proposal for 90 days.

In March, 2013, the Commission solicited public comment on a separate proposal, wherein it would invite commercial applications for a Category One license in Region C and, upon completion of the process, determine whether to issue a commercial license.  That decision was to be made based upon the strength of the commercial applications received by the Commission and any tribal-state compact existing between the Commonwealth and the Mashpee.  On April 18, 2013, the Commission voted to adopt that proposal and begin accepting commercial applications.

## II. **Procedural History**

This Court denied a motion for a preliminary injunction and dismissed the case in February, 2012.  The First Circuit reversed, in part, and remanded for further proceedings in August, 2012.  In light of that mandate, in September, 2012 the Court held a status conference to discuss with the parties how best to proceed.

Before the Court could set a new schedule, two interested

-5-

Indian tribes moved to intervene. The first tribe, the Mashpee Wampanoag Tribe of Gay Head ("the Aquinnah"), moved to intervene in order to defend the constitutionality of the Gaming Act. The second tribe, the Mashpee, moved to intervene by special limited appearance in order to seek dismissal of plaintiff's Complaint.

Two additional putative intervenors soon petitioned to join the fray. In September, 2012 and December, 2012, respectively, the Aquinnah Gayhead Community Association ("the AGHCA") and Town of Aquinnah ("the Town") filed motions seeking to intervene if the Court allowed the Aquinnah to do so.

In December, 2012, the Court heard argument on the pending motions to intervene and also was asked to consider the on-going negotiations that followed the BIA's disallowance of the First Compact and the "dual track" proposal then before the Commission. Ultimately, the Court granted plaintiff's request to file an amended complaint and provided the putative intervenors an opportunity to comment on how that revision affected their respective motions, if at all.

Plaintiff filed an Amended Complaint in January, 2013, which, in addition to addressing the events leading up to and following the First Circuit's remand, also narrowed the relief sought. Whereas previously plaintiff had claimed that the whole of § 91 of the Gaming Act violated the Equal Protection Clause and the Massachusetts Declaration of Rights, by the Amended

-6-

Complaint plaintiff challenges only § 91(e). That provision, divided into its two component clauses, reads as follows:

> ...if a mutually agreed-upon compact has not been negotiated by the governor and Indian tribe or if such compact has not been approved by the general court before July 31, 2012, the commission shall issue a request for applications for a category 1 license in Region C pursuant to chapter 23K of the General Laws not later than October 31, 2012;
>
> provided, however, that if, at any time on or after August 1, 2012, the commission determines that the tribe will not have land taken into trust by the United States Secretary of the Interior, the commission shall consider bids for a category 1 license in Region C under said chapter 23K.

M.G.L.c. 194, § 91(e). The Amended Complaint also alleges that the Commission's ongoing refusal to accept commercial applications for Region C violates the same provisions and prays for declaratory and injunctive relief and attorneys' fees and costs.

The Court convened another status conference in April, 2013, at which time the parties notified the Court about the Second Compact entered into by the Commonwealth and the Mashpee and the Commission's anticipated decision to begin accepting commercial applications in Region C.

## III. **Aquinnah's Motion to Intervene and Related Intervenors**

The Aquinnah is a federally recognized tribe with jurisdiction over land on the western half of Martha's Vineyard, a part of Region C, which it obtained as a result of a 1985 settlement agreement between the Commonwealth, the Town and a

-7-

predecessor to the AGHCA. The Aquinnah claims that the Gaming
Act has granted it the right to negotiate a tribal-state compact
with the Commonwealth and to conduct gaming on those lands.
Accordingly, it seeks intervention as of right pursuant to Fed.
R. Civ. P. 24(a)(2), or, in the alternative, by the Court's
permission pursuant to Fed. R. Civ. P. 24(b).

The Town and the AGHCA (along with the Commonwealth)
maintain that the Aquinnah waived any right to conduct gaming on
those lands under the terms of the 1985 settlement agreement.
They seek to intervene in order to preserve their rights under
that settlement and only if the Aquinnah is permitted to join the
action.

## A. Intervention as of Right

### 1. Legal Standard

To succeed under Fed. R. Civ. P. 24(a)(2), a party seeking
intervention as of right must establish (1) the timeliness of its
motion to intervene, (2) the existence of an interest relating to
the transaction that forms the basis of the pending action, (3) a
realistic threat that the disposition of the action will impede
its ability to protect that interest and (4) the lack of adequate
representation of its position by any existing party. R&G Mortg.
Corp. v. Fed. Home Loan Mortg. Corp., 584 F.3d 1, 7 (1st Cir.
2009). Although each element must be satisfied, the four
elements are to be read together and in keeping with "a

-8-

commonsense view of the overall litigation." <u>Pub. Serv. Co. of</u>
<u>New Hampshire</u> v. <u>Patch</u>, 136 F.3d 197, 204 (1st Cir. 1998).  The
fact-intensive nature of this inquiry "limits the utility of
comparisons between and among published opinions." <u>Id.</u>

### 2. Application

Taking a "commonsense view of the overall litigation," the
contingent nature of the Aquinnah's claimed interests in § 91(e)
and the Commonwealth's willingness and ability to defend it, the
Court is compelled to conclude that the Aquinnah is not entitled
to intervention as of right under Fed. R. Civ. P. 24(a).

The Amended Complaint, filed after the Aquinnah sought
intervention, concerns the constitutionality of § 91(e) of the
Gaming Act.  The Aquinnah all but concedes that it does not hold
an interest in that provision because, by its plain terms,
§ 91(e) only benefits an Indian tribe which has negotiated a
compact with the Governor and obtained approval of that compact
prior to July 31, 2012.  To date, the Aquinnah has not entered
into any gaming compact with the Commonwealth.  While the
Aquinnah also claims an interest in § 91(e) based upon the
possibility that a timely Mashpee compact could exclude
commercial competitors from Region C, thereby benefitting any
future Aquinnah-operated casino, that interest is too remote and

unavailing for other reasons discussed infra.[1]  If plaintiff
succeeds and the Court holds only § 91(e) of the Gaming Act to be
unconstitutional, the rights of the Aquinnah, if any, will not be
affected.

Rather, the Aquinnah seeks intervention based upon the
possibility that this litigation could impede an interest it
claims under § 91(a).  Whether the Aquinnah holds such an
interest, however, is unclear because it depends upon several
unresolved legal questions.  Most notably, the Aquinnah cannot
benefit from § 91 unless it did not waive its right to conduct
gaming on Aquinnah lands as a condition of the 1985 settlement
agreement entered into with the conditional intervenors and the
Commonwealth (now codified by legislation at 25 U.S.C. § 1771).
That matter is currently the subject of a dispute among those
parties.

Even assuming that the Aquinnah holds such an interest, it
is unclear whether the Aquinnah's claimed interest will be
threatened by this case.  Its interest in § 91(a) will only be
affected if the Court first finds that § 91(e) is

_____

[1] This is essentially the same interest claimed by the
Mashpee and subsequently rejected by this Court except that the
Aquinnah has less basis for asserting it.  Just as it is
insufficient to render a party necessary under Fed. R. Civ. P.
19, it is insufficient to merit intervention as of right.  See B.
Fernandez & Hnos., Inc. v. Kellogg USA, Inc., 440 F.3d 541, 545
n.2 (1st Cir. 2006) ("[C]ases applying Rule 19(a)(2)(i) are
helpful in interpreting application of Rule 24(a)(2) and vice
versa.").

-10-

unconstitutional and, upon conducting a severability analysis, the Court strikes down § 91 as a whole because it further finds that the statute would not have been enacted absent § 91(e). See Ackerley Commc'ns of Massachusetts, Inc. v. City of Cambridge, 135 F.3d 210, 215 (1st Cir. 1998) (stating test for severability of Massachusetts statute). Only the Aquinnah has suggested that § 91(e) might not be severable; in fact, plaintiff contends that there is a strong public policy in Massachusetts favoring severability of unconstitutional provisions. See Peterson v. Comm'r of Revenue, 825 N.E.2d 1029, 1038 (2005).

Most significantly, the Aquinnah's presumptive position that § 91(e) is severable and that § 91 as a whole is constitutional aligns with the position taken by the Commonwealth. When the constitutionality of a statute is at issue, courts generally presume that a government defendant, if present, will adequately represent "the interests of all private defenders" absent a showing to the contrary. Massachusetts Food Ass'n v. Massachusetts Alcoholic Beverages Control Comm'n, 197 F.3d 560, 566-67 (1st Cir. 1999). From the time that the original Complaint was filed, the Commonwealth has defended the Gaming Act in its entirety and, from all appearances, intends to continue to do so. The Aquinnah nevertheless claims that the Commonwealth cannot adequately represent its interest in saving the statute because the Commonwealth will be unwilling to raise legal

-11-

arguments in support of the constitutionality of the Gaming Act
that depend upon the Aquinnah's purported eligibility to
negotiate a compact under § 91(a) and to conduct gaming on its
lands-in-trust on Martha's Vineyard. To the extent that those
differing interpretations of § 91(a) become relevant to the
constitutionality of the entire Gaming Act during a severability
analysis, the Court may permit the Aquinnah to present those
arguments in the form of an amicus brief. See id. at 567
(affirming denial of intervention and noting that "variations of
legal argument could adequately be presented in amicus briefs").
That difference of opinion does not, however, warrant adding the
Aquinnah as a party.

## B. Permissive Intervention

### 1. Legal Standard

Upon a timely motion pursuant to Fed. R. Civ. P.
24(b)(1)(B), the Court may permit any third party to intervene
who "has a claim or defense that shares with the main action a
common question of law or fact." When making that determination
the Court must consider whether the permissive intervention will
unduly delay or prejudice the adjudication of the original
parties' rights. Fed. R. Civ. P. 24(b)(3). Among other factors,
the Court should also consider whether the putative intervenor's
interest is adequately represented by an existing party. See
Massachusetts Food Ass'n v. Sullivan, 184 F.R.D. 217, 224 (D.

-12-

Mass. 1999) aff'd sub nom. Massachusetts Food Ass'n, 197 F.3d at
560.   Apart from those considerations, a district court may
consider "almost any factor rationally relevant" to the motion
for permissive intervention and enjoys "very broad discretion in
granting or denying the motion." Daggett v. Comm'n on
Governmental Ethics & Election Practices, 172 F.3d 104, 113 (1st
Cir. 1999).

### 2.   **Application**

Although the Aquinnah's claimed interest in § 91(a)
satisfies the low threshold requirement for permissive
intervention under Fed. R. Civ. P. 24(b), the Commonwealth's
ability to represent those interests adequately also counsels
against permitting the Aquinnah to intervene.   This conclusion
becomes more clear by analysis of the only factor required by the
rule, namely, the potential for undue delay and prejudice to the
existing parties.   As discussed supra, the Aquinnah's claimed
interest in the Gaming Act is contingent upon whether or not it
waived its right to conduct gaming on Aquinnah lands under the
1985 settlement agreement.   The Commonwealth and putative
conditional intervenors argue that the Aquinnah did just that.
Permitting the Aquinnah to intervene would eventually require
adjudication of its rights under that settlement agreement and
would involve evidence and legal argument wholly unrelated to the
constitutionality of the Gaming Act.   Undertaking that inquiry

-13-

threatens to delay substantially this litigation and to prolong the alleged irreparable injury and prejudice of the plaintiff.

In sum, the Aquinnah's interest in this litigation is, at best, contingent while, at the same time, adequately represented by the Commonwealth.  Accordingly, the Aquinnah's motion to intervene will be denied.

### C.  Conditional Motions to Intervene by the AGHCA and Town

Both the AGHCA and the Town seek intervention only if the Court permits the Aquinnah to intervene and argue issues with respect to the 1985 settlement to which they, and the Aquinnah, are parties.  Because the Court will not permit the Aquinnah to intervene, it will also deny as moot the motions filed by the conditional intervenors.

### IV.  Mashpee's Motion to Intervene and Dismiss

The Mashpee moves to intervene by special, limited appearance, without waiving its sovereign immunity, in order to assert that plaintiff's Amended Complaint must be dismissed for failure to join a necessary and indispensable party pursuant to Fed. R. Civ. P. 12(b)(7) and Fed. R. Civ. P. 19.  More specifically, the Mashpee asserts that it is a necessary party because the relief sought by plaintiff threatens (1) its exclusive right to operate a casino in Region C, (2) the tribal-state compact between the Mashpee and the Commonwealth and (3) its right to have the Department of the Interior determine

-14-

whether the Mashpee is eligible to have lands taken into trust by the federal government.  The Mashpee also claims that it is an indispensable party but because the Court concludes that it is not a necessary party, the Court need not reach that question.

## A.   Legal Standard

Fed. R. Civ. P. 19 protects the interests of parties not yet involved in the ongoing litigation.  Courts assessing a motion filed under Fed. R. Civ. P. 19 are instructed to engage in a two-part analysis, by first determining whether the absent party is "necessary" to the action under the criteria laid out in Fed. R. Civ. P. 19(a), and, if so and the party may not be joined, by next determining whether the action should proceed without the absent party under the criteria laid out in Fed. R. Civ. P. 19(b).  Jimenez v. Rodriguez-Pagan, 597 F.3d 18, 25 (1st Cir. 2010).

A party is "necessary" if either: (A) a court cannot accord complete relief among the existing parties without joining the absent party or (B) the absent party "claims an interest" related to the subject of the action and is so situated that disposing of the action in its absence would either (i) "impair or impede" its ability to protect that interest or (ii) leave an existing party subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations because of the interest. See Fed. R. Civ. 19(a)(1).

-15-

The interest claimed must be a "legally protected interest" relating to the subject matter of the action. United States v. San Juan Bay Marina, 239 F.3d 400, 406 (1st Cir. 2001) (citing Ninth Circuit precedent). "It is important to identify clearly the [absent party's] interest at stake." See Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty. v. California, 547 F.3d 962, 971 (9th Cir. 2008). The mere fact that the outcome of a case "may have some financial consequences" for the non-parties is "not sufficient to make [them] required parties." Id.

## B.  Application

There is no dispute that this Court could accord plaintiff adequate relief without joining the Mashpee by enjoining the state defendants.  Whether the Mashpee is a "necessary" party, however, depends upon whether it claims an interest that is "legally protected" under Fed. R. Civ. P. 19.  The Court will analyze each interest put forward seriatim.

### 1.  Interest in Exclusivity

The Mashpee first aver that it is a necessary party because its exclusive right to operate a casino is put into jeopardy by the instant case.  In order to be "legally protected," any right to exclusivity must be contained in the plain terms of § 91(e) of the Gaming Act or within the terms of the compact between the Commonwealth and the Mashpee. Cf. Colusa, 547 F.3d at 972

-16-

(claimed interest in freedom from competition not "legally protected" because tribal-state compact did not protect against competition).

The Mashpee's interest in exclusivity does not derive from the plain language of § 91(e). As the First Circuit noted, § 91(e) "does not, by its literal terms, preclude issuance of a category 1 license in Region C if a compact has been approved." KG Urban, 693 F.3d at 6. At most, where a gaming compact has been approved prior to July 31, 2012, § 91(e) only prevents the Commission from issuing a request for applications for a commercial license in Region C until the Commission determines that the compacting tribe will not have land taken into trust. Assuming that that restriction applies here, the text of the statute supplies no criteria under which the Commission is to render that determination nor does it prescribe an allotted time to do so.[2] In other words, under § 91(e) the Commission could determine that the Secretary of the Interior will not accept lands into trust on behalf of the Mashpee, before the Secretary actually renders that decision. In that case, if the Commission were to solicit and issue a commercial license in Region C, and the Mashpee's application was later approved, the Commission's

---

[2] The import of that statutory language and what interest it creates, if any, is unclear considering that the compact approved prior to July 31, 2012 was subsequently disapproved by the BIA and a second compact will not be approved before that deadline.

-17-

determination would have been in error but not in violation of the terms of § 91(e). The statute which grants such discretion to the Commission cannot be found to confer a legally protected interest in exclusivity.

Consistent with this interpretation of the statute, exclusivity is also not required under the Second Compact currently pending before the Massachusetts General Court. The Second Compact explicitly contemplates a scenario where the Mashpee's exclusivity is "abrogated" and the Commonwealth's share of the Mashpee's gaming revenues diminishes based upon whether the Mashpee operates the only casino in the Commonwealth, in Region C or if it competes in Region C with a private entity. The Second Compact does not, therefore, depend upon or guarantee the Mashpee's claimed exclusive gaming rights. Accordingly, as with the absent tribes in Colusa, the Mashpee's claimed interest in exclusivity is not "legally protected" and the fact that the litigation has financial consequences for the tribe does not make it a necessary party. See Colusa, 547 F.3d at 972.

## 2. Interest in the Tribal-State Compact

Nor does this litigation threaten the integrity of the as-yet unapproved Second Compact. Since the Mashpee filed its motion to intervene, the First Compact was disallowed and plaintiff has narrowed its constitutional challenge to just sub-section (e) of § 91. Plaintiff has repeatedly claimed, and the

-18-

Mashpee has since conceded, that the instant litigation does not directly challenge the Second Compact. Plaintiff agrees that even if it were granted a commercial license to operate in Region C, the Mashpee would retain rights under IGRA to conduct gaming on any Indian lands. The Second Compact is consistent with both claims: it explicitly acknowledges that the Mashpee may operate a tribal casino in Region C in competition with a commercial casino. Because plaintiff now seeks only to strike down the expired exclusive bargaining period and the prohibition on commercial licenses in Region C, the Court perceives no possible threat to the validity of the tribal-state compact.

The operative facts here render inapposite American Greyhound Racing, Inc. v. Hull, cited by the Mashpee, in which the private plaintiffs sought relief that would invalidate gaming compacts between the State of Arizona and several absent tribes. See 305 F.3d 1015, 1025 (9th Cir. 2002) ("Termination of existing [gaming] compacts is central to this litigation."). Here, only plaintiff's ability to compete for a gaming license and the Mashpee's claimed interest in exclusivity are at stake. The Mashpee's ability to enter into a compact is not at issue. Accordingly, the logic of American Greyhound Racing does not apply. See Colusa, 547 F.3d at 972 (distinguishing American Greyhound Racing because plaintiff did "not seek to invalidate compacts to which it is not a party").

-19-

### 3. Interest in Agency Review

Finally, the Mashpee asserts that plaintiff's litigation strategy jeopardizes its interest in having the Department of the Interior ("DOI") determine whether it is eligible to have lands taken into trust by the federal government in light of Carcieri v. Salazar, 555 U.S. 379 (2009).

Assuming that such an interest is "legally protected," the Mashpee still is not a necessary party to this litigation because the subject interest is not in jeopardy here. The First Circuit, which examined the significance of the Carcieri decision to plaintiff's claim, did not call upon this Court to opine upon the Mashpee's eligibility to have its land taken into trust. Rather, the Circuit Court noted that if DOI, upon concluding its analysis of the Carcieri issue, determines that the Mashpee is ineligible to have its land taken into trust, the ensuing delay would undermine the Commonwealth's argument that § 91(e) affords a temporary accommodation to the IGRA process. See KG Urban, 693 F.3d at 27 (reasoning that unfavorable Carcieri determination "would require Congressional action" prior to Mashpee having land taken into trust and would result in substantial delay).

Moreover, DOI's review of the Mashpee's application is well underway and plaintiff does not challenge that agency action here. This Court's decision on the merits, whatever it may be, will not be binding upon the agency or the tribe, neither of

-20-

which is a party here, nor upon any court with jurisdiction to
review DOI's final decision. See In re Sonus Networks, Inc,
S'holder Derivative Litig., 499 F.3d 47, 57 (1st Cir. 2007)
(noting issue preclusion requires identity of issues adjudicated
and that "the party against whom preclusion is asserted was a
party" to the prior adjudication). It is also unlikely to impact
DOI's review as a practical matter because the import of this
Court's decision, if any, will necessarily be limited by the
legal claims and the factual record before this Court, both of
which differ substantially from those currently before DOI. Cf.
Picciotto v. Cont'l Cas. Co., 512 F.3d 9, 16 (1st Cir. 2008)
(affirming finding that absent party was "necessary" because
adverse judgment would be "persuasive precedent" and could have
practical impact on state suit involving identical claims).

     In sum, the Mashpee's purported interests in this litigation
are either not "legally protected" or not impaired by a
successful challenge to § 91(e). As a result, the Mashpee is not
a necessary party under Fed. R. Civ. P. 19(a) and the Court need
not consider at this stage whether it is indispensable under Fed.
R. Civ. P. 19(b). The foregoing assumes, of course, that only
§ 91(e) of the Gaming Act is at issue. If the Court reaches the
severability question raised by the Aquinnah and the
constitutionality of the whole of § 91 is placed at issue, the
Mashpee may be permitted to renew its motion or present arguments

-21-

in an amicus brief on the question of severability.   The

Mashpee's motion by special limited appearance to intervene and

dismiss will, therefore, be denied without prejudice.

### ORDER

In accordance with the foregoing,

1)   the motion to intervene as of right by the Aquinnah (Docket No. 39) is **DENIED;**

2)   the conditional motions to intervene by the AGHCA (Docket No. 52) and the Town (Docket No. 75) are **DENIED as moot;** and

3)   the motion to intervene and dismiss by special limited appearance of the Mashpee (Docket No. 62) is **DENIED without prejudice.**

**So ordered.**

Nathaniel M. Gorton
United States District Judge

Dated June 6 , 2013

-22-